## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

CHARLES L. BURTON, JR.,     )
                           )
     Plaintiff,        )
                           )
v.                        )     No. 2:19-cv-00242-ECM
                           )
JEFFERSON DUNN,        )
Commissioner, Alabama     )
Department of Corrections   )
                           )
     Defendant.      )

---

## DEFENDANT'S ANSWER AND MOTION TO DISMISS

---

Steve Marshall
*Alabama Attorney General*

Lauren A. Simpson*
*Alabama Assistant Attorney General*
 *Counsel of Record

Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130-0152
Tel: (334) 353-1209
Fax: (334) 353-3637
lsimpson@ago.state.al.us

April 26, 2019

Defendant Jefferson S. Dunn, in his official capacity as Commissioner of the Alabama Department of Corrections, for his answer to Plaintiff Charles L. Burton, Jr.'s, complaint,[1] states as follows:

## RESPONSE TO PRELIMINARY STATEMENT

1. Defendant admits that Burton is a death-row inmate in the custody of the Alabama Department of Corrections.

2. Defendant has insufficient information to admit or deny this allegation.

3. Defendant has insufficient information to admit or deny this allegation.

4. Defendant has insufficient information to admit or deny this allegation.

5. Defendant admits that Chris Summers is the chaplain of Holman Correctional Facility and has participated in executions in that role. However, as of April 2019, the ADOC's lethal injection protocol has been amended, and neither Chaplain Summers nor any other religious advisor will be permitted to be present in the execution chamber.[2] While the ADOC continues to develop a protocol for nitrogen hypoxia, Defendant affirms that no religious advisor, including the

_____

1. Doc. 1.
2. *See* Exhibit A.

Holman chaplain, will be present in the execution chamber.

6.  Defendant admits that ADOC policy prohibits persons who are not employed by the ADOC and trained in the execution protocol from being in the chamber during an execution, one of the most sensitive tasks undertaken by the ADOC. While the prison chaplain was previously allowed to be present in the chamber, the protocol has been amended to exclude him.

7.  Denied.

8.  Denied.

9.  Admitted.

10. Admitted. Domineque Ray made a last-minute request that his imam be present in the execution chamber, which was denied. As a concession, the ADOC removed Chaplain Summers from the chamber for Ray's execution.

11. Defendant admits that an ADOC filing in Ray's case, drafted under the severe time constraints of last-minute execution litigation, contained a misstatement. Since that time, and in light of the Supreme Court's recent decision in *Murphy v. Collier*,[3] the ADOC has amended the protocol to exclude the Holman chaplain from the execution chamber. Henceforth, no spiritual advisor of any kind will be permitted in the chamber, regardless of whether that person is an ADOC employee.

---

3. 139 S. Ct. 1111 (2019) (mem.).

12. The procedural history of Ray's case is admitted.

13. The procedural history of Ray's case is admitted.

14. The procedural history of Ray's case is admitted.

15. Admitted.

16. Admitted. Burton's execution is not pending at this time.

17. Denied.

18. Defendant denies that any action of this Court is required to exclude the Holman chaplain from the execution chamber, as the ADOC has amended its protocol. Defendant admits that no religious or spiritual advisors will be permitted to be in the chamber but denies that Burton is entitled to relief on that ground.

## RESPONSE TO JURISDICTION AND VENUE

19. Affirmed.

20. Affirmed.

## RESPONSE TO PARTIES

21. Defendant admits that Burton is a death-row inmate at Holman Correctional Facility and that he was sentenced to death for his participation in the robbery-murder of Doug Battle in 1991. Burton was an active participant in that crime, the facts of which were summarized by the Alabama Court of Criminal

Appeals on direct appeal.[4] As that court concluded, "Although he was not the actual person to pull the trigger, [Burton's] degree of participation in the robbery-murder makes the application of the death sentence constitutional in this case."[5]

22. Admitted.

## RESPONSE TO CASE OR CONTROVERSY

23. Denied.

24. Denied.

## RESPONSE TO EXHAUSTION OF ADMINISTRATIVE REMEDIES

25. Admitted.

## RESPONSE TO FACTUAL ALLEGATIONS

26. Defendant has insufficient information to admit or deny this allegation.

27. Admitted.

28. Defendant has insufficient information to admit or deny this allegation.

29. Admitted.

30. Admitted.

---

4. *Burton v. State*, 651 S. 2d 641, 643–44 (Ala. Crim. App. 1993).
5. *Id.* at 658–59.

31.     Admitted.

32.     Admitted.

33.     Admitted.

34.     Denied. As of April 2019, the lethal injection protocol has been amended to exclude the Holman chaplain from the execution chamber.[6] While the ADOC continues to develop a protocol for nitrogen hypoxia, Defendant affirms that no religious advisor, including the Holman chaplain, will be present in the execution chamber.

35.     Admitted.

36.     Admitted.

37.     Admitted.

38.     Admitted.

39.     Admitted.

40.     Admitted.

41.     Admitted.

42.     Admitted.

43.     Admitted.

44.     Admitted.

45.     Admitted in part. Pursuant to the amended protocol, all religious

---

6. *See* Exhibit A.

advisors must leave at the appointed time.

46.     Admitted to the extent that several hours may elapse before the death sentence is carried out due to stays put in place for the courts to consider the inmate's eleventh-hour litigation. Pursuant to the amended protocol, all religious advisors must leave at the appointed time.

47.     Admitted.

48.     Admitted to the extent that Ray's religious advisor was removed from Ray's cell at the appointed time pursuant to the protocol.

49.     Admitted. Pursuant to the amended protocol, all religious advisors must leave at the appointed time.

50.     Denied. The protocol has been amended to exclude the Holman chaplain from the execution chamber.

51.     Admitted to the extent that witnesses present at the request of the condemned, including his religious advisor, watch from a room adjacent to the execution chamber and in view of the condemned.

52.     Denied. The protocol has been amended to exclude the Holman chaplain from the execution chamber.

53.     Denied. The protocol has been amended to exclude the Holman chaplain from the execution chamber.

54.     Admitted to the extent that Chaplain Summers has been present at

most executions since 1997.

55.     Admitted.

56.     Denied.

57.     Admitted.

58.     Admitted.

59.     Admitted.

60.     Defendant has insufficient information to admit or deny this allegation.

61.     Denied, as Chaplain Summers will not be present during Burton's execution.

62.     No religious advisor, including the Holman chaplain, will be present in the execution chamber during Burton's execution.

63.     Denied.

64.     Defendant has insufficient information to admit or deny this allegation.

65.     Defendant has insufficient information to admit or deny this allegation.

66.     Defendant has insufficient information to admit or deny this allegation.

67.     Admitted to the extent that Burton made a timely election of nitrogen

hypoxia. While the ADOC continues to develop an execution protocol for nitrogen hypoxia, Defendant denies that any religious advisor will be present in the execution chamber.

68. Denied to the extent that the Holman chaplain will be present in the execution chamber during Burton's execution.

## RESPONSE TO FIRST CAUSE OF ACTION
## (RLUIPA)

69. Denied.

70. Admitted.

71. Admitted.

72. Admitted.

73. Defendant has insufficient information to admit or deny this allegation.

74. Denied. The lethal injection protocol has been amended to exclude the Holman chaplain from the execution chamber.[7] While the ADOC continues to develop a protocol for nitrogen hypoxia, Defendant affirms that no religious advisor, including the Holman chaplain, will be present in the execution chamber. Moreover, RLUIPA uses a burden-shifting framework, and Burton has not shown that the ADOC's policies impose a substantial burden on his religious exercise: he

---

7. *See* Exhibit A.

will be permitted a contact visit with his religious advisor shortly before his execution is scheduled to begin, and his advisor may witness the execution in Burton's view, if Burton so desires. Even if Burton had met this threshold requirement to shift the burden, the ADOC has a compelling governmental interest in the safety of its facilities, personnel and visitors, and so individuals who are not ADOC employees and trained members of the execution team are excluded from the execution chamber.[8] This State policy is appropriate under RLUIPA. Plaintiff has cited no authority, and Defendant is aware of none, holding that a prisoner is entitled to spiritual counsel of his choice inside the execution chamber itself when the execution protocol prohibits the presence of all spiritual advisors.

75.    Denied. As stated above, the ADOC has a compelling governmental interest in the safety of its facilities, personnel and visitors, and so individuals who are not ADOC employees and trained members of the execution team are excluded from the execution chamber. This State policy is appropriate under RLUIPA. Plaintiff has cited no authority, and Defendant is aware of none, holding that a

---

8. *See Jackson v. Danberg*, 594 F.3d 210, 230 (3d Cir. 2010) (the State has a "moral obligation to carry out executions with the degree of seriousness and respect that the state-administered termination of human life demands"); *Ray v. Dunn*, No. 2:19-cv-00088-WKW, 2019 WL 418105, at *5 (M.D. Ala. Feb. 1, 2019); *see also Thompson v. Dep't of Corrs.*, 18 P.3d 1198, 1208 (2001) ("[D]efendants' policy requiring Reverend Margaret Harrell to leave Thompson 20 minutes before his departure for the execution chamber did not violate [California law]. For the same reasons, this rule did not violate the First Amendment's guarantee of freedom of religion.")

prisoner is entitled to spiritual counsel of his choice inside the execution chamber itself when the execution protocol prohibits the presence of all spiritual advisors.

76.     Admitted to the extent that the lethal injection protocol previously called for the Holman Chaplain to be present in the execution chamber to pray with the condemned if the condemned so desired.

77.     Denied. As stated above, the ADOC has a compelling governmental interest in the safety of its facilities, personnel and visitors, and so individuals who are not ADOC employees and trained members of the execution team are excluded from the execution chamber. This State policy is appropriate under RLUIPA. Plaintiff has cited no authority, and Defendant is aware of none, holding that a prisoner is entitled to spiritual counsel of his choice inside the execution chamber itself when the execution protocol prohibits the presence of all spiritual advisors. Moreover, the Holman chaplain is an ADOC employee, whereas other religious advisors of any professed faith are not.

78.     Admitted to the extent that Burton has quoted RLUIPA, but denied to the extent that Burton has met his burden under RLUIPA or that the State has not shown a compelling governmental interest in prohibiting non–ADOC employees from being in the execution chamber.

79.     Denied. The lethal injection protocol has been amended to exclude the Holman chaplain from the execution chamber. While the ADOC continues to

develop a protocol for nitrogen hypoxia, Defendant affirms that no religious advisor, including the Holman chaplain, will be present in the execution chamber.

80.     Denied. The lethal injection protocol has been amended to exclude the Holman chaplain from the execution chamber.[9] While the ADOC continues to develop a protocol for nitrogen hypoxia, Defendant affirms that no religious advisor, including the Holman chaplain, will be present in the execution chamber.

## RESPONSE TO SECOND CAUSE OF ACTION
### (ARFA)

81.     Denied.

82.     Admitted.

83.     Denied.

84.     Denied. As discussed above, the ADOC has a compelling governmental interest in the safety of its facilities, personnel and visitors, and so individuals who are not ADOC employees and trained members of the execution team are excluded from the execution chamber. This State policy is appropriate under the ARFA. Plaintiff has cited no authority, and Defendant is aware of none, holding that a prisoner is entitled to spiritual counsel of his choice inside the execution chamber itself when the execution protocol prohibits the presence of all spiritual advisors.

---

9. *See* Exhibit A.

85.     Denied. The ADOC has a compelling governmental interest in the safety of its facilities, personnel and visitors, and so individuals who are not ADOC employees and trained members of the execution team are excluded from the execution chamber. This State policy is appropriate under the ARFA. Plaintiff has cited no authority, and Defendant is aware of none, holding that a prisoner is entitled to spiritual counsel of his choice inside the execution chamber itself when the execution protocol prohibits the presence of all spiritual advisors. Moreover, the lethal injection protocol has been amended to exclude the Holman chaplain from the execution chamber. While the ADOC continues to develop a protocol for nitrogen hypoxia, Defendant affirms that no religious advisor, including the Holman chaplain, will be present in the execution chamber.

86.     Denied. The lethal injection protocol has been amended to exclude the Holman chaplain from the execution chamber. While the ADOC continues to develop a protocol for nitrogen hypoxia, Defendant affirms that no religious advisor, including the Holman chaplain, will be present in the execution chamber.

87.     Denied. The lethal injection protocol has been amended to exclude the Holman chaplain from the execution chamber. While the ADOC continues to develop a protocol for nitrogen hypoxia, Defendant affirms that no religious advisor, including the Holman chaplain, will be present in the execution chamber.

## RESPONSE TO THIRD CAUSE OF ACTION
## (ESTABLISHMENT CLAUSE)

88.     Denied.

89.     Admitted.

90.     Admitted.

91.     Admitted.

92.     Admitted.

93.     Denied. The lethal injection protocol has been amended to exclude the Holman chaplain from the execution chamber. While the ADOC continues to develop a protocol for nitrogen hypoxia, Defendant affirms that no religious advisor, including the Holman chaplain, will be present in the execution chamber.

94.     Denied. The ADOC has a compelling governmental interest in the safety of its facilities, personnel and visitors, and so individuals who are not ADOC employees and trained members of the execution team are excluded from the execution chamber. This State policy is appropriate under the Establishment Clause. Plaintiff has cited no authority, and Defendant is aware of none, holding that a prisoner is entitled to spiritual counsel of his choice inside the execution chamber itself when the execution protocol prohibits the presence of all spiritual advisors.

95.     Denied. The lethal injection protocol has been amended to exclude the Holman chaplain from the execution chamber. While the ADOC continues to

develop a protocol for nitrogen hypoxia, Defendant affirms that no religious advisor, including the Holman chaplain, will be present in the execution chamber.

96.    Denied. The lethal injection protocol has been amended to exclude the Holman chaplain from the execution chamber. While the ADOC continues to develop a protocol for nitrogen hypoxia, Defendant affirms that no religious advisor, including the Holman chaplain, will be present in the execution chamber.

## RESPONSE TO FOURTH CAUSE OF ACTION
## (FREE EXERCISE CLAUSE)

97.    Denied.

98.    Admitted.

99.    Admitted.

100.    Denied. The lethal injection protocol has been amended to exclude the Holman chaplain from the execution chamber. While the ADOC continues to develop a protocol for nitrogen hypoxia, Defendant affirms that no religious advisor, including the Holman chaplain, will be present in the execution chamber. Moreover, the ADOC has a compelling governmental interest in the safety of its facilities, personnel and visitors, and so individuals who are not ADOC employees and trained members of the execution team are excluded from the execution chamber. This State policy is appropriate under the Free Exercise Clause. Plaintiff has cited no authority, and Defendant is aware of none, holding that a prisoner is

entitled to spiritual counsel of his choice inside the execution chamber itself when the execution protocol prohibits the presence of all spiritual advisors.

101.   Denied. The ADOC has a compelling governmental interest in the safety of its facilities, personnel and visitors, and so individuals who are not ADOC employees and trained members of the execution team are excluded from the execution chamber. This State policy is appropriate under the Free Exercise Clause.

102.   Denied. A condemned inmate has the benefit of a contact visit with his religious advisor before he is taken to the execution chamber, and his advisor may witness the execution in the sight of the condemned if the condemned so chooses.

103.   Denied. Only ADOC employees who are trained, practiced members of the execution team are permitted into the execution chamber as a security measure. No one else—not other ADOC employees, and certainly not free-world volunteers, no matter their level of clearance—is allowed into the chamber. An execution is one of the most serious and solemn tasks undertaken by the ADOC, and maintaining the security of the facility and the safety of all participants is of paramount importance.[10]

---

10. Most fundamentally, ADOC employees trained in the protocol can be trusted to follow the protocol and adhere to orders, whereas free-world religious advisors are under no such strictures. Indeed, during Domineque Ray's execution

104. Denied.

105. Denied.

106. Denied. The lethal injection protocol has been amended to exclude the Holman chaplain from the execution chamber. While the ADOC continues to develop a protocol for nitrogen hypoxia, Defendant affirms that no religious advisor, including the Holman chaplain, will be present in the execution chamber.

107. Denied. The ADOC has a compelling governmental interest in the safety of its facilities, personnel and visitors, and so individuals who are not ADOC employees and trained members of the execution team are excluded from the execution chamber. This State policy is appropriate under the Free Exercise Clause. Plaintiff has cited no authority, and Defendant is aware of none, holding that a prisoner is entitled to spiritual counsel of his choice inside the execution chamber itself.

108. Denied. Burton will have the benefit of a contact visit with his spiritual advisor shortly before his execution, and if he so desires, that advisor may witness from the adjoining room, separated by a two-way window. Burton has

---

litigation, his advisor, Yusuf Maisonet, spoke to a reporter about the decision. The article noted:

> Maisonet said he was asked not to comment to the media, but he agreed to an interview with AL.com.
>
> "They want to treat me like an employee without benefits," Maisonet said. "They want to control me. I do what I want to do."

Greg Garrison, *Muslim Chaplain: Death Row Inmate Needs Imam at Execution*, AL.COM (Feb. 2, 2019), https://bit.ly/2UDQu6i.

directed this Court to no controlling federal authority, whether statutory or caselaw, requiring that an inmate be allowed the spiritual advisor of his choice *within* the execution chamber.

## RESPONSE TO PRAYER FOR RELIEF

109. Denied.

110. As Justice Kavanaugh explained in his concurrence to *Murphy*:

> In an equal-treatment case of this kind, the government ordinarily has its choice of remedy, so long as the remedy ensures equal treatment going forward. *See Stanton v. Stanton*, 421 U.S. 7, 17–18 (1975). For this kind of claim, there would be at least two possible equal-treatment remedies available to the State going forward: (1) allow all inmates to have a religious adviser of their religion in the execution room; or (2) allow inmates to have a religious adviser, including any state-employed chaplain, only in the viewing room, not the execution room. A State may choose a remedy in which it would allow religious advisers only into the viewing room and not the execution room because there are operational and security issues associated with an execution by lethal injection. Things can go wrong and sometimes do go wrong in executions, as they can go wrong and sometimes do go wrong in medical procedures. States therefore have a strong interest in tightly controlling access to an execution room in order to ensure that the execution occurs without any complications, distractions, or disruptions. The solution to that concern would be to allow religious advisers only into the viewing room.[11]

The ADOC has opted for the second alternative. Burton's rights under RLUIPA, ARFA, and the First Amendment will not be violated during his execution, and so Defendant asks that this matter be dismissed.

---

11. 139 S. Ct. at 1112 (Kavanaugh, J., concurring) (citation edited).

## DEFENSES

A.     This action fails to state a claim for relief as a matter of law.

B.     Burton is not entitled to the relief he seeks.

C.     Alabama's lethal injection protocol does not amount to intentional, reckless indifference to acts violating any party's constitutional rights.

D.     Defendant denies any claim or allegation of Burton's complaint that is not expressly admitted above.

Respectfully submitted on this the 26th day of April 2019.

STEVE MARSHALL
ATTORNEY GENERAL OF ALABAMA
BY—

*/s/ Lauren A. Simpson*
Lauren A. Simpson
*Alabama Assistant Attorney General*
Counsel for Defendant

## CERTIFICATE OF SERVICE

I certify that on April 26, 2019, I served a copy of the foregoing upon counsel for the Plaintiff by filing the same via the Court's CM/ECF system, which shall cause the same to be electronically transmitted to: **Matt D. Schulz, Spencer J. Hahn,** and **John Anthony Palombi**.

Respectfully submitted,

Steve Marshall
*Alabama Attorney General*

**/s/ Lauren A. Simpson**
Lauren A. Simpson
*Alabama Assistant Attorney General*
Counsel for Defendant

OF COUNSEL:

Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130
Tel: (334) 353-1209
Fax: (334) 353-3637
lsimpson@ago.state.al.us

# EXHIBIT A

# AFFIDAVIT OF JEFFERSON S. DUNN

STATE OF ALABAMA

MONTGOMERY COUNTY

Before me, a Notary Public in and for said County and State, personally appeared Jefferson S. Dunn and being by me first duly sworn, deposes and says under oath as follows:

1.      My name is Jefferson S. Dunn, I am over (19) nineteen years of age, I have personal knowledge of the following facts, and state that those facts are true and correct.

2.      I am Commissioner of the Alabama Department of Corrections (hereinafter referred to as, "ADOC").  In my capacity as Commissioner of the ADOC, I have the authority to develop and/or modify policies and procedures of the ADOC for execution of persons sentenced to death for a capital crime.

3.      In my capacity as Commissioner, I modified the procedures, described in paragraph 2., above, so that the Chaplain of W.C. Holman Prison no longer remains in the execution chamber with the condemned offender at the time of the condemned's execution.

4.      Further, no spiritual advisor, including the Chaplain of W.C. Holman Prison, will remain at the condemned's cell beyond the time allowed in the policies and procedures of the ADOC for execution of persons sentenced to death for a capital crime.

5.      Finally, while the ADOC policies and procedures for execution of persons sentenced to death by nitrogen hypoxia are still being developed, they will reflect the above modified policies and procedures.

_____
Jefferson S. Dunn

SWORN TO and SUBSCRIBED BEFORE ME on this the 25th day of April, 2019.

1

(SEAL)

Notary Public
My commission Expires: 1/20/19

2