PUBLIC VERSION—REDACTED COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHARLES L. BURTON JR., <br><br> Plaintiff, <br> v. <br><br> JEFFERSON DUNN, Commissioner, <br> Alabama Department of Corrections, <br><br> Defendant. | Case No.  2:19-cv-242 (RAH) (SMD) <br><br> **CAPITAL CASE** |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT .........................................................................................................................2

I.      The Court Should Grant Summary Judgment on the RLUIPA Claim................................2

        A.      The Undisputed Facts Show that Mr. Burton Has Shown a Substantial Burden on His Religious Exercise. ...........................................................................2

        B.      The Undisputed Facts Show that the ADOC Has Not Met Its Burden to Show a Compelling Governmental Interest Furthered by the Least Restrictive Means....................................................................................................6

II.     The Court Should Grant Summary Judgment on the ARFA Claim. .................................10

CONCLUSION.......................................................................................................................12

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Burwell v. Hobby Lobby Stores, Inc.*,
    573 U.S. 682 (2014) .............................................................................................. 2, 3, 4, 5

*Clark v. Container Corp. of Am.*,
    589 So. 2d 184 (Ala. 1991) .............................................................................................. 11

*Davila v. Gladden*,
    777 F.3d 1198 (11th Cir. 2015) ..................................................................................... 3, 7

*Doggrell v City of Anniston, Ala.*,
    277 F. Supp. 3d 1239 (N.D. Ala. 2017) .............................................................................. 11

*Dunn v. Ray*,
    139 S. Ct. 661 (2019) .................................................................................................. 4, 10

*Employment Div., Dep't of Human Res. of Ore. v. Smith*,
    494 US. 872 (1990) ............................................................................................................ 4

*Ex parte McCall*,
    596 So. 2d 4 (Ala. 1992) .................................................................................................. 11

*Gutierrez v. Saenz*,
    141 S. Ct. 127 (2020) ................................................................................................ 4, 5, 8

*Gutierrez v. Saenz*,
    818 Fed. App'x 309 (5th Cir. 2020) ................................................................................... 5

*Gutierrez v. Saenz*,
    Civil No. 1:19-CV-00185 (S.D. Tex. Nov. 24, 2020) ......................................................... 8

*Gutierrez v. Saenz*,
    No. 19-8695, 2021 WL 231538 (Jan. 25, 2021) ................................................................. 8

*Holt v. Hobbs*,
    574 U.S. 352 (2015) ................................................................................................. *passim*

*Knight v. Thompson*,
    796 F.3d 1289 (11th Cir. 2015) .......................................................................................... 4

*Midrash Sephardi, Inc. v. Town of Surfside*,
    366 F.3d 1214 (11th Cir. 2004) ...................................................................................... 3, 4

*Presley v. Scott*,
   No. 4:13-cv-02067, 2014 WL 7146837 (N.D. Ala. Dec. 15, 2014) ........................................11

*Procunier v. Martinez*,
   416 U.S. 396 (1974) ................................................................................................................9

*Ray v. Comm'r, Ala. Dep't of Corr.*,
   915 F.3d 689 (11th Cir. 2019) ........................................................................................3, 4, 10

*Rich v. Sec'y, Fla. Dep't of Corr.*,
   716 F.3d 525 (11th Cir. 2013) .................................................................................................7

*Smith v. Governor for Ala.*,
   562 F. App'x 806 (11th Cir. 2014) ..........................................................................................3

*Storer Cable Commc'ns v. City of Montgomery*,
   806 F. Supp. 1518 (M.D. Ala. 1992) .....................................................................................11

*Thai Meditation Ass'n of Alabama, Inc. v. City of Mobile, Alabama*,
   980 F.3d 821 (11th Cir. 2020) ...............................................................................3, 10, 11, 12

*United States v. Sec'y, Fla. Dep't of Corr.*,
   828 F.3d 1341 (11th Cir. 2016) ...............................................................................................4

**Statutes**

28 U.S.C. § 1367(a) ......................................................................................................................10

42 U.S.C. § 2000cc–1(a) .............................................................................................................1, 2

42 U.S.C. § 2000cc–3(g) ................................................................................................................4

42 U.S.C. § 2000bb .......................................................................................................................11

**Other Authorities**

Ala. Const. Art. I, § 3.01 ............................................................................................................1, 10

Fed R. Civ. P. 30(b)(6) ...................................................................................................................8

*Gutierrez v. Saenz*,
   No 19-8695, https://www.scotusblog.com/case-files/cases/gutierrez-v-saenz/ ........................5

**INTRODUCTION**

The response brief of the Alabama Department of Corrections (the "ADOC") confirms that there are no disputed material facts and that the Court should grant summary judgment for Plaintiff Charles L. Burton, Jr.

The ADOC concedes that Mr. Burton is a devout Muslim who sincerely believes that having an imam will provide spiritual guidance in his final moments. *See* Def.'s Resp. to Pl.s. Mot. for Summ. J. ("Def.'s Resp.") at 5, 7. The ADOC also does not dispute that if the decision to deny Mr. Burton's request for an imam stands, he will be forced to forego aspects of his religious practice. Instead, the ADOC claims that its decision does not substantially burden Mr. Burton's faith because having an imam at the time of death is not necessary or central to the Islamic faith. That is not the law. The Religious Land Use and Institutionalized Persons Act ("RLUIPA") requires only that Mr. Burton show that the ADOC's decision imposes a "substantial burden" on his religious exercise, regardless of whether that exercise is "compelled." 42 U.S.C. § 2000cc–1(a); § 2000cc–5(7)(a); *see also Holt v. Hobbs*, 574 U.S. 352, 362 (2015) ("[T]he protection of RLUIPA . . . 'is not limited to beliefs which are shared by all of the members of a religious sect.'" (internal quotations and citation omitted)). The Alabama Religious Freedom Amendment ("ARFA") requires less still: that Mr. Burton show only that the ADOC's decision imposes ***any*** burden on his religious beliefs. Ala. Const. Art. I, § 3.01. Mr. Burton has satisfied those requirements.

The ADOC has not met its burden to show that its denial of Mr. Burton's request for an imam in the execution chamber is the least restrictive means of furthering a compelling governmental interest. ████████████████████████ ████████ Def.'s Resp. at 5. It concedes that the Bureau of Prisons ("BOP") has permitted non-employee religious advisors to attend executions without issues. *Id.* at 10. It concedes that,

1

Case 2:19-cv-00242-RAH-SMD   Document 75   Filed 01/29/21   Page 6 of 18

for decades, it required the Holman chaplain to attend every execution. *Id.* at 1–2. ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 9. It offered no expert to counter the opinions of Plaintiff's expert, a correctional consultant with more than four decades of experience in correctional institutions. And it cannot contradict its prior sworn testimony that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. B. to Pl.'s Mot. for Summ. J., Dep. of Cheryl Price (Aug. 20, 2020) ("Price Dep.") 159:21–160:3.

Against this record, there are no issues of fact concerning Mr. Burton's RLUIPA and ARFA claims, and the Court should grant summary judgment for Mr. Burton on those counts.

## ARGUMENT

### I. The Court Should Grant Summary Judgment on the RLUIPA Claim.

The legal framework under RLUIPA is not in dispute. *See* Def.'s Resp. at 14, 16. The challenging party bears the initial burden to show that the government's action substantially burdens his sincerely held religious belief. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 712 (2014); Def.'s Resp. at 14. The burden then shifts to the government to prove that substantially burdening the religious exercise of the "particular claimant" is "the least restrictive means of furthering [a] compelling governmental interest." *Hobby Lobby*, 573 U.S. at 726; 42 U.S.C. § 2000cc–1(a); Def.'s Resp. at 16.

#### A. The Undisputed Facts Show that Mr. Burton Has Shown a Substantial Burden on His Religious Exercise.

The ADOC's response brief demonstrates that there are no disputed facts as to the substantial burden that the ADOC's bar on an imam in the execution chamber places on Mr. Burton's religious exercise.

2

*First*, the ADOC does not dispute that Mr. Burton holds a sincere belief that "the presence of his religious advisor in the final moments of life is an important aspect of his exercise of religion." Compl. ¶ 73; Answer ¶ 73; *see also* Def.'s Resp. at 7 ("The issue before the Court is not the sincerity of Burton's beliefs."). Mr. Burton is a devout Muslim and has been for the past fifty years. Def.'s Resp. at 5, 14, 7. Accordingly, he believes he will suffer serious spiritual harm if an imam is not present when he is executed. *See* Compl. ¶ 66. Mr. Burton believes that an imam can provide religious guidance at his hour of death, including for example, by offering prayers expressing his desire to be: (1) positioned in the spiritual direction of Mecca if he is physically unable to do so; and (2) relieved of the pangs of death. *See id.* ¶¶ 64-66.[1]

*Second*, the ADOC cannot dispute that, by denying Mr. Burton's request for an imam in the execution chamber, he will be forced to forego exercise of his sincerely held religious beliefs. That is all that is required to show a substantial burden on religion. *See Davila v. Gladden*, 777 F.3d 1198, 1205 (11th Cir. 2015) (a court "look[s] to 'whether the [policy] imposes a substantial burden on the ability of the objecting part[y] to conduct [himself] in accordance with [his] religious beliefs" (quoting *Hobby Lobby*, 573 U.S. at 724) (alterations in *Davila*)); *see also Ray v. Comm'r, Ala. Dep't of Corr.*, 915 F.3d 689, 700 (11th Cir. 2019) ("RLUIPA defines a substantial burden on free exercise in the broadest of terms. . . .").

The ADOC instead argues that Mr. Burton's faith has not been substantially burdened because the presence of an imam is not "necessary to his practice." *See* Def.'s Resp. at 15–16.[2]

---

[1] The ADOC chose not to depose Mr. Burton, Def.'s Resp. at 7, but Mr. Burton has reviewed the Complaint and affirmed that it accurately describes his religious beliefs. *See* Decl. of Charles L. Burton Jr. ¶ 3 (Ex. A).

[2] The ADOC's citations to *Smith v. Governor for Ala.*, 562 F. App'x 806, 813 (11th Cir. 2014), and *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)), are misplaced. *See* Def.'s Resp. at 15-16. The Supreme Court's rulings in *Holt* and *Hobby Lobby*—

3

But this is not the law under either Supreme Court or Eleventh Circuit precedent. The Supreme Court has made clear that the question is whether a government practice burdens ***a particular individual's*** religious practice, and the courts "have no business" wading into questions of orthodoxy or whether a particular religious belief is reasonable. *Hobby Lobby*, 573 U.S. at 724; *see also id.* ("Repeatedly and in many different contexts, we have warned that courts must not presume to determine . . . the plausibility of a religious claim." (quoting *Employment Div., Dep't of Human Res. of Ore. v. Smith*, 494 US. 872, 887 (1990))); *see also Holt*, 574 U.S. at 316 (finding a prison's grooming policy placed a substantial burden on the petitioner, who believed that the growing of a beard was a dictate of his religious faith). The Eleventh Circuit followed those teachings in the *Ray* case,[3] noting that RLUIPA "define[s] the 'exercise of religion' to include '***any*** exercise of religion' whether or not compelled by, or central to, a system of religious belief,'" with Congress mandating that the statute "be construed in favor of a broad protection of religious exercise." 915 F.3d at 700 (quoting *Hobby Lobby*, 5732 U.S. 682, and 42 U.S.C. § 2000cc–3(g)) (emphasis in *Ray*).[4]

---

precedent that the ADOC ignores—make clear that a religious practice need not be compelled to be protected under RLUIPA. *See also Thai Meditation Ass'n of Ala., Inc. v. City of Mobile, Ala.*, 980 F.3d 821, 830 (11th Cir. 2020) ("We didn't say [in *Midrash*] that to count as a 'substantial burden' government conduct must 'completely prevent[ ]' religious exercise. . . . To be sure, the 'completely prevents' [language] appear[s] in the *Midrash* opinion. But [it] appear[s] only as [an] example[] of the sort of conduct that clearly satisfies the substantial-burden standard—not as the standard itself.").

[3]    The Supreme Court vacated the stay that the Eleventh Circuit granted in *Ray*, but did so on timeliness grounds and did not disturb the Eleventh Circuit's merits analysis. *Dunn v. Ray*, 139 S. Ct. 661 (2019).

[4]    *See also Knight v. Thompson*, 796 F.3d 1289 (11th Cir. 2015) (reconsidering a RLUIPA challenge in light of *Holt*); *United States v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1341, (11th Cir. 2016) (applying *Holt* and affirming summary judgment of a RLUIPA claim in favor of a prisoner).

4

Were there any doubt on this point, the Supreme Court put it to rest with its grant of a stay in *Gutierrez v. Saenz*, 141 S. Ct. 127 (2020) (mem.). The *Gutierrez* case raises substantially the same issues as those here: whether the state's exclusion of a condemned prisoner's religious advisor from the execution chamber violates RLUIPA. *See* SCOTUSblog, *Gutierrez v. Saenz*, No 19-8695, https://www.scotusblog.com/case-files/cases/gutierrez-v-saenz/. The Fifth Circuit denied the petitioner's request for a stay, applying a strict definition of substantial burden that gauged the importance of the religious advisor's presence to the religious beliefs at issue. *See Gutierrez v. Saenz*, 818 Fed. App'x 309, 314 (5th Cir. 2020) (requiring a showing that the government "truly pressure[d] the adherent to significantly modify his religious behavior and significantly violate his religious beliefs") (internal quotations and citation omitted). The Supreme Court summarily reversed the Fifth Circuit—impliedly finding that the petitioner had shown a substantial burden on his religious exercise. *See Gutierrez v. Saenz*, 141 S. Ct. 127 (2020) (mem.).[5] While it did not provide an opinion explaining its rationale, the Court undoubtedly relied on its holdings in *Hobby Lobby* and *Holt* that rejected the suggestion that RLUIPA distinguishes between objectively important and unimportant religious beliefs. *See* discussion *supra* at p. 4.

The ADOC also claims that because it provides Mr. Burton other religious accommodations, the denial of an imam in the execution chamber does not constitute a substantial burden. *See* Def.'s Resp. at 14-15. The Supreme Court has addressed this argument, too, and flatly rejected it. In *Holt*, even though the prison offered "a prayer rug and a list of distributors of Islamic material, [permission] to correspond with a religious advisor, and [permission] to maintain

---

[5] The ADOC quotes at length from the Fifth Circuit's opinion in *Gutierrez*, where the court found it unlikely that the petitioner could prevail on his claims. *See* Def.'s Resp. at 12–13. But that decision was negated when the Supreme Court reversed the Fifth Circuit, so the opinion carries no weight. The Supreme Court has now formally vacated the Fifth's Circuit's stay order. *Gutierrez v. Saenz*, 19-8695, 2021 WL 231538 (Jan. 25, 2021) (mem.).

5

the required diet and observe religious holidays," the prison policy barring inmates from growing beards was a RLUIPA violation. 574 U.S. at 361–62. As the Court explained, "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Id.*; *see also id.* at 361 (noting that consideration of alternative means is a relevant consideration under First Amendment law, but not RLUIPA).

Indeed, the ADOC's current efforts to diminish the importance of a spiritual advisor at the time of death, *see* Def.'s Resp. at 15, contradict the ADOC's own longstanding practice of ***requiring*** the Holman chaplain to attend executions. ████████████████████████████

████████. *See* Ex. A to Pl.'s Mot. for Summ. J., Dep. of Chris Summers 105:15–106:3, 142:12–144:1; Ex. C to Pl.'s Mot. for Summ. J., List of Inmates Executed Since Death Penalty Reinstated (00008–000010). In implementing and applying this policy, the ADOC recognized that, for people of faith, the transition from this world to the next is a critically spiritual moment. It cannot now cast doubt on Mr. Burton's faith as sharing that same belief.

    **B.**    **The Undisputed Facts Show that the ADOC Has Not Met Its Burden to Show a Compelling Governmental Interest Furthered by the Least Restrictive Means.**

Given the substantial burden that the ADOC's policy places on Mr. Burton's sincerely held religious beliefs, the ADOC bears the burden to show that its policy furthers a compelling governmental interest by the least restrictive means. Concessions in the ADOC's response brief make clear that the ADOC has not met that burden.

***First***, the record makes clear the ADOC has not shown a compelling governmental interest. The ADOC concedes that it "does not have ***particular*** security concerns" related to Mr. Burton. Def.'s Resp. at 5 (emphasis in original); *see id.* at 19 ("The concern here is not that ***Burton*** will

6

somehow free himself form the gurney and injure an ADOC employee or visitor.") (emphasis in original). That alone is fatal to the ADOC's position. The Supreme Court made clear in *Holt* that the ADOC must show a compelling governmental interest "through application of the challenged law to the person—*the particular claimant* whose sincere exercise of religion is being substantially burdened." *Holt*, 574 U.S. at 363 (internal quotation marks and citations omitted).

The ADOC goes on to assert that "if the ADOC were to permit [Mr.] Burton to have a spiritual advisor present in the execution chamber, it would then have to make this accommodation for every inmate." Def.'s Resp. at 20. But that argument, too, runs headlong into *Holt*:

> The Department also asserts that . . . [other inmates] may request beards for religious reasons. . . . At bottom, this argument is but another formulation of the classic rejoinder of bureaucrats throughout history: If I make an exception for you, I'll have to make one for everybody, so no exceptions. We have rejected a similar argument in analogous contexts, and we reject it again today.

574 U.S. at 368 (citations omitted)).

In any event, the ADOC's purported compelling governmental interest is solely premised on speculative, exaggerated fears that cannot meet RLUIPA's requirements. *See* Def.'s Resp. at 17 (describing executions as a "sensitive procedure, one that often receives extensive media attention and in which emotions run high"); *Davila*, 777 F.3d at 1206 ("generalized statement of interests, unsupported by specific and reliable evidence, is not sufficient to show that the prison restriction furthered a compelling government interest"); *Rich v. Secretary, Fla. Dep't of Corr.*, 716 F.3d 525, 533 (11th Cir. 2013) (overturning summary judgment on a RLUIPA claim because prison's evidence of security concerns was "speculative"). As the Eleventh Circuit has stated, "prison officials cannot simply utter the magic words 'security and costs' and as a result receive unlimited deference from those of us charged with resolving these disputes." *Davila*, 777 F.3d at 1206 (rejecting a prison warden's affidavit containing a conclusory assertion that accommodating a prisoner's request would raise security and cost concerns); *Holt*, 574 U.S. at 864 (respect for

7

prison officials' expertise "does not justify the abdication of the responsibility, conferred by Congress, to apply RLUIPA's rigorous standard").

The ADOC claims that having a non-ADOC-employed religious advisor "creates an additional risk during an event at which tensions are already heightened." Def.'s Resp. at 19. ███

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ *Id*. at 9. The ADOC also argues that a prisoner—whether sincerely or to delay the execution—may change his religious affiliation at the "eleventh hour." *Id.* at 6. But it does not dispute that a simple solution would be to impose a time restriction on when the prisoner could request a religious advisor. *See* Pl.' Mot. at 25. In short, as the district court found in *Gutierrez*, the ADOC has not demonstrated "that serious security concerns would result from allowing inmates the assistance of a chosen spiritual advisor in their final moments." Order, *Gutierrez v. Saenz*, Civil No. 1:19-CV-00185, at 29 (S.D. Tex. Nov. 24, 2020) [ECF No. 124].[6]

***Second***, the record demonstrates that the ADOC has not carried its burden on least restrictive means. The ADOC concedes that other alternatives exist. *See* Def.'s Resp. at 2-3. Instead of denying Mr. Burton's request, the ADOC acknowledges that it could have permitted a

---

[6] The district court issued this order on November 24, 2020, after the Supreme Court granted the stay in *Gutierrez* and remanded the case to the district court for the limited purpose of evaluating the security concerns that the state had raised. *Gutierrez v. Saenz*, 141 S. Ct. 127 (2020) (mem.). Just this week, the Supreme Court granted certiorari in *Gutierrez* and again remanded the case to the district court, this time for a decision on the merits, with a direction that the district court take into account the findings of fact in its order of November 24, 2020. *Gutierrez v. Saenz*, 19-8695, 2021 WL 231538 (Jan. 25, 2021) (mem.). Given that the district court already has rejected the state's purported security concerns, it is highly unlikely that the state can satisfy its burden of showing a compelling interest.

8

"free-world" religious advisor to attend the execution. *Id.* It could have hired an institutional chaplain of the Muslim faith. *Id.*; *see also* 42 U.S.C. § 2000cc-3(c) ("[RLUIPA] may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise.") But the ADOC never considered these options. *See* Pl.'s Mot. for Summ. J. at 13–14 ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. And notably, even now, the ADOC never describes its decision to deny Mr. Burton's request the "least restrictive means"—it simply refers to the decision as "the most reasonable option." *See* Def.'s Resp. at 5.

Moreover, as recent BOP executions demonstrate, it is entirely feasible to permit non-employee spiritual advisors in the execution chamber. *See Holt*, 574 U.S. at 368 ("While not necessarily controlling, the policies followed at other well-run institutions would be relevant to a determination of the need for a particular type of restriction." (quoting *Procunier v. Martinez*, 416 U.S. 396 (1974)); Pl.'s Mot. for Summ. J. at 17–19 (describing BOP executions where outside religious advisors were permitted in the execution chamber). Those requests were made and granted shortly before the scheduled execution. *See id.*; *see also* Decl. of Shawn Nolan ¶ 3 ("Nolan Decl.") (Ex. B) (request for spiritual advisors granted approximately two weeks before the scheduled execution). And the religious advisors who attended BOP executions received little or no training. *See* Pl.'s Mot. for Summ. J. at 17–19; Nolan Decl. ¶ 5 ("Each spiritual advisor went through the same standard background check required of all visitors to BOP facilities. Neither received any training").[7] The BOP's practice of allowing religious advisors of the inmate's faith

---

[7]    Rather than address the BOP's practice of permitting non-employee religious advisors in the execution chamber, the ADOC argues that many other states do not authorize "the presence of

in the execution chamber "demonstrates that the [ADOC] could satisfy its security concerns through a means less restrictive than denying petitioner the exemption he seeks." *Holt*, 574 U.S. at 369.

More than two years ago, when the Supreme Court vacated the stay in *Ray* on timeliness grounds, Justice Kagan dissented, noting that the ADOC had offered "no evidence to show that its wholesale prohibition on outside spiritual advisers is necessary" to achieve its goal of prison security. *Dunn*, 139 S. Ct. at 662. "Why couldn't Ray's imam receive whatever training in execution protocol the Christian chaplain received? The State has no answer. Why wouldn't it be sufficient for the imam to pledge, under penalty of contempt, that he will not interfere with the State's ability to perform the execution? The State doesn't say." *Id.* After a full opportunity to build a record in this case to answer those questions, the ADOC has done nothing of the kind. As Justice Kagan stated in *Ray*, "[t]hat is not enough." *Id.*

## II. The Court Should Grant Summary Judgment on the ARFA Claim.

The analysis under ARFA is similar to RLUIPA with one notable difference: a plaintiff need only show ***any*** burden on his religious exercise to shift the burden to the government to demonstrate a compelling government interest and least restrictive means. Ala. Const. Art. I, § 3.01, Sec. V; *Thai Meditation Ass'n*, 980 F.3d at 840 (once the plaintiff has adequately pleaded that his religious exercise is burdened, strict scrutiny is triggered). For the same reasons why the

---

free-world clergy in the execution chamber." Def.'s Resp. at 22. This argument is both misplaced and irrelevant. There is no evidence in the record one way or the other to indicate whether these other jurisdictions actually bar religious advisors of the prisoners' own faith from the chamber or whether the jurisdictions accommodate such requests. But even assuming that these states ban religious advisors, the BOP's practice nevertheless demonstrates the feasibility of allowing a non-employee religious advisor in the execution chamber.

10

ADOC's denial of an imam in the execution chamber violates RLUIPA, then, it also violates ARFA.

The ADOC nevertheless argues that the Court should decline to exercise supplemental jurisdiction over Mr. Burton's ARFA claim based on the conclusory assertion that "questions about the proper interpretation of Alabama law should be addressed to the Alabama Supreme Court." Def.'s Mot. Summ. J. at 34. But the Court has the discretion to exercise its jurisdiction, 28 U.S.C. § 1367(a), and should do so here, as other courts have done in similar circumstances.

*First*, the Court can apply ordinary principles of statutory construction to construe ARFA. Amendments to the Alabama Constitution are "subject to the same general rules of construction as are other laws . . . due regard being had to the broader objects and scope of the constitution as a charter of popular government." *Clark v. Container Corp. of Am.*, 589 So. 2d 184, 190 (Ala. 1991) (internal citations and quotations omitted). In applying statutory construction principles here, a court must heed "the fundamental rule of statutory construction": "to ascertain and give effect to the intent of the legislature in enacting the statute." *Ex parte McCall*, 596 So. 2d 4, 5 (Ala. 1992). As the Eleventh Circuit has stated, under Alabama law, this Court's job "is to interpret [ARFA's] language to mean exactly what it says." *Thai Meditation Ass'n*, 980 F.3d at 840 (alteration in original; internal quotations and citation omitted).

*Second*, and relatedly, this Court can look to federal law for guidance, as ARFA stems from federal statute—the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, the same statute on which RLUIPA is modeled. *See Thai Meditation Ass'n*, 980 F.3d at 839; *Storer Cable Commc'ns v. City of Montgomery*, 806 F. Supp. 1518, 1538 (M.D. Ala. 1992) (by borrowing language and phrases from federal statutes, a government "meant also to import the accumulated

11

case law interpreting that language, and there is no reason to doubt that Alabama courts will avail themselves of this jurisprudence").

***Third***, consistent with these principles, multiple courts in the Eleventh Circuit have exercised jurisdiction over ARFA claims, and in doing so have expounded on its meaning and interpreted its boundaries. *See, e.g.*, *Presley v. Scott*, No. 4:13-cv-02067 LSC-TMP, 2014 WL 7146837, at *24 (N.D. Ala. Dec. 15, 2014) ("Because the language of this State constitutional provision essentially tracks that of RLUIPA, the court, at least initially, will interpret and apply this provision in the light of case law decided under RLUIPA."); *Doggrell v City of Anniston, Ala.*, 277 F. Supp. 3d 1239, 1266 (N.D. Ala. 2017) (undertaking "a plain reading of ARFA's provisions" to determine that it did not apply to an unlawful termination claim by a former municipal employee); *Thai Meditation Ass'n*, 349 F. Supp. 3d at 1200–01 (applying ARFA and noting that it "is perfectly clear both in what it says and what it doesn't").[8]

## CONCLUSION

For the reasons stated above and in the opening brief, the Court should grant Plaintiff's Motion for Summary Judgment.

Dated: January 29, 2021

---

[8] The ADOC cites *Thai Meditation* to support its argument that the Court should decline to exercise jurisdiction here. Def.'s Resp. at 26–27. But the district court in that case ***did*** exercise jurisdiction over the plaintiffs' ARFA claims, 349 F. Supp. 3d 1165, 1200–01 (S.D. Ala. 2018), and the Eleventh Circuit on appeal applied and further expounded on ARFA, 980 F.3d at 837–40.

Respectfully submitted,

| | |
|---|---|
| */s/ Spencer J. Hahn* <br> Spencer J. Hahn <br> Oregon Bar No. 043027 | Paige Sharpe (*pro hac vice*) <br> District of Columbia Bar No. 982433 <br> Anna Thompson (*pro hac vice*) <br> Virginia Bar No. 77392 |

*/s/ Spencer J. Hahn*
Spencer J. Hahn
Oregon Bar No. 043027

*/s/ John Anthony Palombi*
John Anthony Palombi
Kentucky Bar No. 86784

*/s/ Matt D. Schulz*
Matt D. Schulz
Nebraska Bar No. 22968
Assistant Federal Defenders
FEDERAL DEFENDERS FOR THE
MIDDLE DISTRICT OF ALABAMA
817 South Court Street
Montgomery, AL 36104
(334) 834-2099
Spencer_Hahn@fd.org
John_Palombi@fd.org
Matt_Schulz@fd.org

Anand Agneshwar (*pro hac vice*)
New York Bar No. 2591030
ARNOLD & PORTER
KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
212-836-8000
anand.agneshwar@arnoldporter.com

Paige Sharpe (*pro hac vice*)
District of Columbia Bar No. 982433
Anna Thompson (*pro hac vice*)
Virginia Bar No. 77392
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001
202-942-5000
paige.sharpe@arnoldporter.com
anna.thompson@arnoldporter.com

James A. Sonne (*pro hac vice*)
California Bar No. 250759
Zeba A. Huq (*pro hac vice*)
California Bar No. 261440
STANFORD LAW SCHOOL
RELIGIOUS LIBERTY CLINIC
559 Nathan Abbott Way
Stanford, CA 94305
650-723-1422
jsonne@law.stanford.edu
zebahuq@law.stanford.edu

*Counsel for Plaintiff Charles L. Burton, Jr.*

14

## **CERTIFICATE OF SERVICE**

I, Paige Sharpe, do hereby certify that a true and correct copy of the foregoing has been filed this 29th day of January 2021 via the Court's CM/ECF system, which will provide service to all counsel of record.

*/s/ Paige Sharpe*
Paige Sharpe

*Counsel for Plaintiff Charles L. Burton, Jr.*